Our next case is number 25 1017 Johnson versus United States. Okay, Miss Palmer. Thank you, Your Honor. May it please the court. My name is Michelle Bomer for appellant Christopher Johnson. The issue in this case that warrants reversal of the district court court of federal claims is involving two issues. Um, both the scope of the half a loaf doctrine and the scope of the favorable determination for Mr Johnson in 2017 by the Board of Corrections for military records. Both of those things are in dispute in our. What was the second one? I heard you say the half a loaf doctors, right? The second point, the scope of a favorable determination in the 2017 Board of Corrections decision for Mr Johnson 2017 2017. Yes. And then an additional error is also the failure of the trial court to provide the administrative record to Mr Johnson upon his request, which happened during the briefing and also during the appellate argument. I'm sorry, the oral argument on the motion to dismiss and that hearing transcript is before the court. And then the court also addressed it in its footnote in the decision. That's footnote six at the appendix 14 to 15. Do you raise that third issue in your briefing to us, though? We did, Your Honor. We that is in footnote 11 on our opening raise issues in page 19. Can't raise issues in footnotes. I'm sorry, Your Honor. You can't raise issues in footnotes. Okay, thank you, Your Honor. Thank you. Returning to the scope of the half a loaf doctrine and the scope of the 2017 order. Governor, how can it be? Martinez seems inconsistent with your brotherhood approach. Now it doesn't mention brotherhood, but how can we take an unbanked decision and say, Well, it doesn't really mean what it said. Well, Your Honor, our position is that we're just asking the court to look at brotherhood as a way to interpret the half a loaf doctrine and apply it. I thought I thought that was a separate argument from the half a loaf. Well, really, they're very similar. They could be. They could be two different arguments, and we presented him that way with limited time here before the court. I don't think that adoption of brotherhood requires you to overturn Martinez for this reason. In Martinez, the issue was a dismissal by the Board of Corrections, and that is not that does not reset the statute of limitations. What's different for Mr Johnson is that in 2017, the Board of Corrections not only changed the line of duty determination, which allowed him. Okay, but your problem is that Martinez is very clear as to what the statute of limitations trigger is, and it runs from the discharge, right? It does run from discharge, Your Honor, except for when the half a loaf doctrine applies, and that is noted in Martinez footnote four when it refers to Friedman. Um, and, um, doesn't doesn't have to loaf only apply when the administrative remedy is mandatory. When you have to exhaust your administrative remedies. Well, here, Your Honor, at the half a loaf doctrine is, uh, the relief for Mr Johnson is mandatory based on what the 2017 I wasn't clear in my question. I think your client did not have to go to the B. C. N. R. Correct? That's correct. It was a permissive, and I thought that we had said that the half a loaf doctrine would only be available if the intervening proceedings were mandatory, not permissive, mandatory in the sense of you have to exhaust your administrative remedies before you go to court. Federal claims. Have we not said that? Well, respectfully, Your Honor, I don't believe that the that the holding in wayless, which is interpreting the holding in X from this court in his predecessor. It's the room case, right? Yes. The rump case by our predecessor. Yes. And the rump case also sets that out. Um, and that's what the trial case would seem to be sort of in point. Well, the rump case in terms of the statement of the law is is factually accurate, but it's application to the facts. The facts here for Mr Johnson are distinguishable from the facts in rump. How? Because the B. C. N. R. Gave him a favorable determination. They determined that he should have a disability rating that justice required that he be given a disability rating. And so when the trial court interprets that decision as only permitting him to have a line of duty redetermination, and that is his full relief, it actually is misinterpreting that Board of Corrections decision, which went further. I can provide you with a citation for that. It is in the appendix at 55 is the 2018 P. E. B. Decision that takes away the corrective favorable determination of the B. C. N. R. In 2017, and that is on page 47 of the appendix where in 48 where the board concluded that an injustice occurred when he was not rated initially in 1992, and he was discharged without consideration for a disability rating. And then the court on the same page went on to say that petitioners injustice must be remedied by returning his record to the P. E. B. To issue a disability rating and revise his disability adjudication. What the P. E. B. Did here and what the trial court found was that it was proper for the P. E. B. To reassess fitness. But that's actually not what 10 U. S. C. 1552 requires and mandates. Once the board in its permissive structure, Mr. Johnson was allowed to bring that claim before the board. So he brought it there and then he won a disability rating and then the P. E. B. Took it away from him. So we respectfully submit that the half a loaf doctrine applies in this case because this is a building rating became mandatory and it's something that the P. E. B. Was required to do. Now, that's a factual situation that hasn't come up accepting for the moment. You say all of this was after well, well after the August 1992 discharge. So how is it relevant? It's relevant, Your Honor, because of the half a loaf doctrine, which says a new cause of action approves when a board didn't have to go to the P. E. B. Again, and he didn't have to go to the board. I mean, I guess what I'm saying is the statute of limitations. Had it had the six year period already run from 92 with respect to what you're talking about. So how is it? How is it relevant? Well, it's relevant, Your Honor, because of the structure of the board of corrections. What this court would be telling veterans is that if they go to the board of corrections and they win, there's no judicial review of the enforcement or the interpretation of that order if it's ultra vires and contrary to law. And in Martinez footnotes for this court said that that a different analysis applies to the statute of limitations when that's happening. And that's what happened for Mr Johnson. I think in Martinez, it also said, and unfortunately, we often don't see this, that someone can file a suit and go to the go to the correction board and then timely go to a correction board and then file in court and have the court proceedings suspended or put in abeyance while the while the correction board proceedings are continuing. Understood, Your Honor. I admit that Mr. Johnson could have done that, but there is no requirement in the half a loaf doctrine that requires him to have done that. So in other words, it doesn't that I guess what I'm getting at, maybe I'm repeating myself. I don't see how the half a loaf of doctrine can apply when he was in a spot where he'd already lost the statute limitations in terms of the court of federal claims. Well, I think that's precisely why we're bringing up Brotherhood, so that this court can evaluate the half a loaf doctrine and see that it doesn't help a veteran that's in this position. I'm sorry, I don't understand what the Brotherhood case has to do with the half a loaf doctrine. Well, Your Honor, it just has to do with a continuing claim or a new cause of action, because that's what the reopening rule under Brotherhood says, that if a board, an administrative body, reopens a decision, that it then resets the statute of limitations. And we understand that in Martinez, you know, a dismissal is not going to reopen the statute of limitations. We're not even arguing that every favorable decision reopens the statute of limitations, but the government here is arguing that Mr. Johnson had to fully win everything, a disability rating and medical retirement, in order for the half a loaf doctrine to apply to him. That's what happened in Wayless and X, but that's, to us, that limits the half a loaf doctrine too much for veterans who have this permissive action with the board. Can you help me with your complaint? I'm not sure that I see in the complaint the theories that you're arguing to us on appeal. Do you allege in the complaint that there was something arbitrary and capricious about what the P.E.B. did on remand from the board, the B.C.N.R.? And if so, where can I see that? We do, Your Honor. That's in paragraphs 19 to 26 in the complaint, and the complaint begins at appendix 22. Actually, I see that my time is almost up. Well, I don't, and I don't see paragraphs 19 to 26. I see the complaint ending at paragraph 18, appendix 24. Our cause of action begins at appendix 23, and in paragraph 18 on appendix 24, we state that the decision of the B.C.N.R., which would be the 2020 decision that affirmed the ad hoc P.E.B., which is the 2018 decision, is arbitrary, capricious, contrary to law, and made without regard to procedures by law and abuse of discretion. And it's the, so it was at the B.C.N.R., then it was at the P.E.B., then it was back at the B.C.N.R., and you're challenging that second B.C.N.R.? And the P.E.B. as well, because under 1552, that P.E.B. did not have the authority to not grant a disability rating once the board awarded them. You don't cite 1552 in the complaint. Does that matter? I don't believe so, Your Honor. I think that... Here's my concern, is if the complaint could be, if it could be only read as asking the Court of Federal Claims to give your client the disability benefits going back to 1992, as opposed to asking for maybe procedural relief, send it back to the P.E.B. to do what the B.C.N.R. asked it to, or told it to do, the statute of limitations argument is arguably different. That is, if the claim for the actual benefits may be accrued in 1992, and therefore the statute ran in whatever, 1998. But if what you're really challenging is just some procedural mix-up in 2017, 2018, maybe it's a different analysis. And it seems like your complaint is just about the 1992, but can you help me on that? Yes, Your Honor. With all due respect, we allege quite specifically in those allegations, so that would be paragraphs 10 through 13, about what the P.E.B. did and what the B.C.N.R. did after that to affirm the P.E.B. that was different from the 2017 B.C.N.R. decision. So the disability rating that I've been talking about today, that the B.C.N.R. required to be given to him in 2017, that is a prerequisite to his medical military retirement. He needs both a fitness determination and a disability rating. What the P.E.B. did in 2018 is it took away the fitness decision that he had in 1992, so it's a new cause of action, and they also refused to give him a disability rating, which the 2017 B.C.N.R. had required. So we do allege that very specifically in the complaint, and that is the basis. We were hoping that the... In any event, the Court of Federal Claims addressed those issues. Pardon me, Your Honor? The Court of Federal Claims addressed those issues. It didn't dismiss for the inadequate complaint. Correct, Your Honor, but we contend that it should have applied the half-a-loaf doctrine to allow him to file this claim. Thank you, Your Honors. Okay, we'll give you a couple of minutes for rebuttal. Ms. Yang? Good morning, Your Honors. May it please the Court. For over 70 years, the settled rule has been that a military disability retirement claim accrues upon the determination of the first competent board, and that later administrative proceedings do not restart that clock. There's no dispute here that the first competent board denied Mr. Johnson's claim in 1992, that he accepted that denial, and that he did not challenge that denial in the Court of Federal Claims within six years. His claim is therefore time-barred. Just now I heard Mr. Johnson's counsel effectively collapse the arguments that had been sort of presented independently in the brief into effectively one ask that the Court apply and expand the half-a-loaf doctrine. So I can certainly sort of rejigger my responses accordingly, because really Martinez forecloses the independent reopening rule that had been presented separately in the briefs. So I think that sort of takes care of the reopening issue. So I can turn to half-a-loaf, Your Honors, and I have a couple things to say about this. The first I would say, Judge Stark, is that as you pointed out, this doctrine, as the Court's precedents teach, really only apply when you're talking about a mandatory administrative process. And here there's no question that the administrative proceedings that Mr. Johnson went through were absolutely permissive. So that's one reason alone on which to not apply half-a-loaf. More critically though, the crux of half-a-loaf is when the relief that the member now seeks must have followed as a matter of law from whatever favorable determination the Board made. The Board's only determination here that was favorable to Mr. Johnson was about line of duty. It said, yes, we're going to correct your records to show that your injuries were incurred in the line of duty. It did not say anything about, Mr. Johnson, you are also entitled to disability retirement pay. And so disability retirement pay could not have followed as a matter of law from the Board's determination about line of duty because the Board doesn't decide entitlement in the first place. What does the Board mean then when it says it was returning it to the PEB to issue a disability rating and revised final disability adjudication? Certainly, Your Honor. What the Board was doing there was it was returning the case to the PEB, which does these adjudications in the first instance, and saying, give him a revised disability adjudication. There's no question that Mr. Johnson got that revised disability adjudication. So between getting the correction to his line of duty determination and the revised adjudication that he got from the PEB undisputedly, that's the full loaf. And that really takes this case squarely outside of the half a loaf doctrine. But the line of duty, I'm sorry, the fitness to serve had not been contested as I understand it, maybe ever, but probably since 1992. What is it about the return instructions that I just read to you that gave authorization to the PEB to undo a favorable fitness finding that had not been contested as far as anyone can tell? I think the authorization rests first and most squarely with the underlying statute, which would be the Disability Retirement Statute 1201. And that's the one that vests the applicable administrative body with the authority to determine these issues in the first instance, including not just line of duty, but also fitness. And then once you get past those two hurdles, then also the actual reading itself and ultimately entitlement. So I'd start there. I would also point, Your Honors, to the Board's referral at Appendix 48 for a revised disability adjudication. That's precisely what the PEB gave to Mr. Johnson, and that's the full loaf. I would also say, Your Honors, that the 1981 decision in Rumpf is actually quite useful in this instance, because it's actually not at all distinguishable, as Mr. Johnson's counsel suggested. So let me give you a sense of the relevant facts in that case. In Rumpf, that was a half a loaf case. A he got a favorable board determination that upgraded the characterization of his discharge from, I think, less than honorable to honorable. And the board referred that member to the equivalent of what is now today DFAS for a determination of whether he was owed any money due to that correction, the discharge characterization correction. DFAS said no back pay. It left the determination as to the discharge characterization untouched, but it said no back pay. We did exactly what the board told us to do. We determined no back pay, and this court said that doesn't create a new statute of limitations, because he got his full loaf. And that's precisely what happened here, Your Honors. Would the BCNR have had authority to return the case to the PEB and direct them only to limit their analysis to, I guess, disability rating? That is, could they have sent it back and said, look, a line of duty is established. No one's ever questioned fitness, so you have to give a disability rating, and you can't unpack anything else. Would the board have had authority to do that? I confess I'm not certain, Your Honor, under the statute. Again, what I do know is that the correction board really sits as a board of review, and so it is going to have the applicable service board determine these first instance issues first, before the board is going to take them up. So I don't know precisely the answer to Your Honor's question, but certainly what happened here is that the board said, we're going to correct your records with respect to line of duty, but we're otherwise going to defer to the PEB to issue that revised adjudication. That's precisely what Mr. Johnson got, and so that takes this case out of the half a loaf exception. I won't say much more about Brotherhood, because I think this court understands that, you know, given the Martinez decision, the Brotherhood and other APA cases really don't apply. What we're talking about at the core of this case is a money claim in the Court of Federal Claims, and that injury accrues upon the determination by the first competent board that the member is not entitled to money, and that happened here in 1992. So we respectfully request that the court affirm, unless there are any other questions. Just one more for me. Ms. Vollmer said something to the effect of, if we were to affirm the Court of Federal Claims here, we'd be telling veterans, essentially, you can win a victory, and then it's, I don't remember what her language was, but it's basically a nullity, the victory, and that that's the meaningful distinction from Martinez in many of our other cases, is that here at the BCNR, her client got a victory as opposed to a dismissal. What would be your response to that? Certainly, Your Honor. I think it would matter significantly what that victory was. If there is a monetary compulsory follow-on to that victory that was obtained below, then that conceivably, but they didn't get, but the member didn't then get that monetary remedy, then conceivably there would be a half-a-loaf issue, because then you have a money issue that sort of brings the Court of Federal Claims into play, and you have the board saying you are entitled to this money, but then the member not getting that money. So that would be, I think, sort of the scenario that I would point the court to, but that's not what happened here, where instead the board says, you know, we're going to correct these things, don't have an immediate determination, don't have an immediate effect on the actual money that you claim you're entitled to, then, you know, maybe at best they can go to district court and bring an APA claim saying, hey, look, you know, there are procedural irregularities that happened here, but of course what they couldn't do is they couldn't bring monetary claims to a district court. All they could do is fix the implementation with respect to that procedural issue. Again, that's not what happened here. Thank you, Your Honors. Okay. Thank you. Ms. Vollmer, we'll give you two minutes. Thank you, Your Honors, for the additional time for rebuttal. I appreciate it. I wanted to draw the court's attention to the government's brief at their responding brief on my opening brief at page 19, where it talks about the fact that the BCNR predicted that the PEB could have undone the fitness for duty decision. That is nowhere in the PEB decision at the appendix 46 to 49. Instead, as Judge Stark quoted, the board determined that justice required that he be given a disability rating. So I wanted to return to 10 U.S.C. 1552 A4, which gives the PEB the authority to carry out a mandate of the district, I'm And that's what we're really arguing here as to why this is mandatory and why the half-a-loaf doctrine should apply to veterans in the position of Mr. Johnson, because he will be without any judicial review with what I was trying to say, Judge Stark, is that if veterans are permitted to do this type of corrective appeal permissively with the Board of Corrections, and then they win, but they don't win absolutely everything, they basically have no judicial review. And here, he won the right to a disability rating, and that's important to Mr. Johnson, to have his disability rating, and he didn't get that here. Thank you for your question. The government says he did get a disability rating. It's just not the rating you wanted. Your Honor, a finding of fitness for duty is not the same as a zero disability rating. It's not the same. He was determined to be fit for duty, and he does not understand. And that took away a finding that was made in 1992. And we have alleged that it's not based on law or fact. And he has no judicial remedy for that. OK. Thank you. Thank you, Your Honor. The case is submitted.